UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

ANDRE CALIX,

       Defendant.

13 Cr. 582 (RPP)

# THE GOVERNMENT'S MEMORANDUM IN OPPOSITION
# TO DEFENDANT'S MOTION TO DISMISS COUNT NINE OF THE INDICTMENT
# AND TO SUPPRESS EVIDENCE

PREET BHARARA
United States Attorney for the
Southern District of New York
One Saint Andrew's Plaza
New York, New York 10007

Richard A. Cooper
Assistant United States Attorney
   *Of Counsel*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1
BACKGROUND .................................................................................................................... 2
    I.      The Bank Robberies............................................................................................. 2
    II.     The Complaint .................................................................................................... 3
    III.    The Defendant's Arrest....................................................................................... 3
    IV.    Procedural History ............................................................................................. 4
ARGUMENT ......................................................................................................................... 5
    I.      The Defendant Is Subject to the Enhanced Sentencing Provisions of Section 924(e) ................................................................................................................. 5
          A.    The Defendant's Prior New York State Controlled Substances Convictions Are "Serious Drug Offenses" Under 18 U.S.C. § 924(e) ....... 5
          B.    Dismissal of Count Nine Is Not an Appropriate Remedy.......................... 8
    II.     Agents Lawfully Searched Calix's Apartment, and an Evidentiary Hearing Is Not Required on This Issue .................................................................. 9
          A. Legal Standard ......................................................................................... 9
          B. Argument ................................................................................................ 11
    III.    Calix's Post-Arrest Statements Were Made Pursuant to a Knowing and Voluntary Miranda Waiver, and an Evidentiary Hearing is Not Required on This Issue ........................................... 14
          A. Legal Standard ....................................................................................... 14
          B. Argument ................................................................................................ 15
CONCLUSION................................................................................................................... 16

## PRELIMINARY STATEMENT

The Government submits this memorandum of law in opposition to defendant Andre Calix's ("Calix" or the "defendant") motion (1) to dismiss Count Nine of the Indictment or, in the alternative, for a ruling that the defendant is not subject to the enhanced sentencing provisions of 18 U.S.C. § 924(e) ("Section 924(e)"); (2) to suppress evidence obtained pursuant to a search of the defendant's bedroom; and (3) to suppress statements made by the defendant both prior and subsequent to the defendant's waiver of his Miranda rights.  The Government respectfully submits that (1) the defendant is subject to the enhanced sentencing provisions of Section 924(e) and the defendant's motion to dismiss Count Nine of the indictment should be denied; (2) with respect to the defendant's motion to suppress evidence seized pursuant to a consent search of the defendant's bedroom, although the allegations contained in the defendant's affidavit meet the bare minimum standard to warrant an evidentiary hearing, they are conclusory and the evidence adduced at a hearing will show that the defendant's consent to search was given knowingly and voluntarily; and (3) with respect to the defendant's motion to suppress statements made both prior to and after Miranda warnings were given, the Government does not intend to offer any statements made prior to the Miranda warnings, and the evidence adduced at a hearing will show that law enforcement did not engage in a deliberate two-step scheme designed to circumvent Miranda.

## BACKGROUND

### I. The Bank Robberies

As set forth in the Complaint filed in this case (the "Complaint"),[1] the Indictment,[2] as well as the discovery produced by the Government to date, Calix committed seven robberies of banks located in Manhattan, New York between June 3, 2013 and July 17, 2013, including one in which he brandished a handgun.

On June 3, 2013, Calix robbed a Capital One Bank branch located at 1407 Broadway, Manhattan, New York by passing a note to the teller that read "Give me all money now!!! OR Gunshots!" See Ex. A ¶ 5(b). Calix obtained $1,265 in that robbery. See Ex. A ¶ 5(b). On June 10, Calix robbed a Sovereign Bank branch located at 1350 Broadway, Manhattan, New York. See Ex. B ¶ 2. On June 15, 2013, Calix robbed a Sovereign Bank branch located at 2275 Broadway, New York, New York by passing a note to a teller that read "Hurry up, hundreds and fifties, don't touch anything. I'll shoot you. No dye pack." See Ex. A ¶ 6(b). Calix obtained $6,309 in that robbery. Id. ¶ 6(b). On July 1, 2013, Calix robbed an HSBC Bank branch located at 739 Amsterdam Avenue, Manhattan, New York. See Ex. B ¶ 4. On July 2, 2013, Calix robbed a HSBC Bank branch located at 2411 Broadway, Manhattan, New York. See Ex. B ¶ 5. On July 8, 2013, Calix robbed an HSBC Bank branch located at 250 Park Avenue, Manhattan New York by brandishing a handgun. See Ex. A ¶ 8(b). Calix obtained $1,109 in that robbery. See id. ¶ 8(b). On July 17, 2013, Calix robbed the same HSBC Bank branch he had robbed on July 2, 2013. See Ex. B ¶ 8.

---

[1] A copy of the Complaint is attached hereto as Exhibit A.

[2] A copy of the Indictment is attached hereto as Exhibit B.

## II. The Complaint

On July 11, 2013, Calix was charged by complaint with bank robbery and armed bank robbery, in violation of Title 18, United States Code, Sections 2113(a) & (d), for the bank robberies that occurred on June 3, 2013; June 15, 2013; and July 8, 2013.

## III. The Defendant's Arrest

The Government expects that the evidence adduced at a hearing will show that on July 18, 2013, pursuant to an arrest warrant issued by the United States District Court for the Southern District of New York, law enforcement officers entered the bedroom where Calix had been living, handcuffed him and removed him from the room while at the same time conducting a limited protective sweep of the area.

The evidence will further show that Calix was provided with a consent to search form indicating, inter alia, that he had been asked by law enforcement officers to permit a complete search of the apartment room that he was occupying, he had been advised of his right to refuse consent, he gave permission voluntarily, and he authorized agents to take any items they determined were related to their investigation. Calix signed that form and agents began searching his bedroom thereafter.

During the ensuing search, agents recovered, inter alia, a Hi-Point 9 mm handgun with a loaded magazine, a radio scanner, various bills of U.S. currency that matched previously-recorded serial numbers for currency connected to certain of the bank robberies Calix was charged with committing, clothing that matched the clothing seen in surveillance pictures from certain of those bank robberies, and pieces of paper listing locations of bank branches in New York City, nearby police precincts, and what appear to be police scanner frequencies for those precincts.

The Government expects that the evidence will show that later that morning, Calix was brought to the offices of the Federal Bureau of Investigation for processing, and that prior to that point agents had not questioned Calix about his participation in the bank robberies. The evidence will further show that Calix's handcuffs were removed and he was read an advice of rights form that advised him, <u>inter alia</u>, that he had the right to remain silent, he had the right to talk to a lawyer for advice before questioning begins, he had the right to have a lawyer with him during questioning, and if he decided to answer questions without a lawyer present, he had the right to stop answering questions at any time. Calix signed a statement that indicated that he read the advice of rights form, understood what his rights were, and was willing to answer questions without a lawyer present.

The evidence will show that Calix was presented with surveillance photographs from all seven bank robberies he committed as well as notes that were recovered from certain of those robberies, admitted to committing each of the robberies, and signed the photos and notes to indicate that he had done so. Calix also admitted to brandishing a handgun at the teller at the HSBC Bank branch in the course of the bank robbery on July 8, 2013.

## IV. Procedural History

On July 31, 2013, a nine count indictment was filed against Calix. Counts One through Five, and Eight, charge Calix with bank robbery, in violation of Title 18, United States Code, Section 2113(a). Count Six charged Calix with armed bank robbery, in violation of Title 18, United States Code, Section 2113(d). Count Seven charged Calix with brandishing and using a firearm in furtherance of a crime of violence, in violation of Title 18, United States Code, Section 924(c)(1)(A)(ii). Count Nine charged Calix with being a felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1). Count Nine also

provided notice to the defendant that, because he had been convicted of at least three predicate drug felonies, he is subject to a sentencing enhancement pursuant to Title 18, United States Code, Section 924(e). As set forth in the Indictment, the defendant's prior convictions include: (i) a conviction on or about September 5, 2013, in New York State Supreme Court, New York County, for Criminal Sale of a Controlled Substance in the Third Degree, Sale of a Narcotic Drug, a Class B Felony, in violation of New York Penal Law Section 220.39; (ii) a conviction on or about March 3, 2005, in New York State Supreme Court, New York County, for Attempted Criminal Possession of a Controlled Substance in the Third Degree, Possession of a Narcotic Drug With the Intent to Sell, a Class C Felony, in violation of New York Penal Law Section 220.16; and (iii) a conviction on or about August 20, 2001, in New York State Supreme Court, New York County, for Criminal Possession of a Controlled Substance in the Third Degree, Possession of a Narcotic Drug With the Intent to Sell, a Class B Felony, in violation of New York Penal Law Section 220.16.

## ARGUMENT

### I. The Defendant Is Subject to the Enhanced Sentencing Provisions of Section 924(e)

#### A. The Defendant's Prior New York State Controlled Substances Convictions Are "Serious Drug Offenses" Under 18 U.S.C. § 924(e)

The Armed Career Criminal Act ("ACCA") requires that individuals who are convicted of violating 18 U.S.C. § 922(g) and who "ha[ve] three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another" be sentenced to at least fifteen years' imprisonment. 18 U.S.C. § 924(e)(1). A prior controlled substance conviction is a "serious drug offense" if "a maximum term of imprisonment of ten years or more is prescribed by law" for the offense. Id.; 18 U.S.C. § 924(e)(2)(A)(ii). In

5

McNeill v. United States, 131 S. Ct. 2218 (2011), the Supreme Court unanimously held that, in determining whether a prior conviction qualifies as a "serious drug offense," a federal court must "consult the maximum sentence applicable to a defendant's previous drug offense at the time of his conviction for that offense." Id. at 2221-22.

The Second Circuit has held that "there is no constitutional requirement that a defendant be given notice before trial that a sentencing enhancement pursuant to the Armed Career Criminal Act . . . may be sought after conviction." United States v. Moore, 208 F.3d 411, 414 (2d Cir. 2000); see also United States v. Santiago, 268 F.3d 151, 155 (2d Cir. 2001) ("[U]nder Section 924(e) the fact of prior convictions is not a separate element of the crime but is 'relevant only to sentencing.'") (citing United States v. Baldwin, 186 F.3d 99, 101 (2d Cir. 1999)). Other circuits have held, for example, that the listing of a predicate offense in the Presentence Report provides sufficient notice that Section 924(e) will be applied. Id. (citing United States v. O'Neal, 180 F.3d 115, 126 (4th Cir. 1999)); see also United States v. Howard, 444 F.3d 326, 327 (5th Cir. 2006) ("Howard received adequate notice of the Government's intent to seek an enhanced sentence under the ACCA through the PSR.").

The defendant asserts that his March 3, 2005 conviction for Attempted Criminal Possession of a Controlled Substance in the Third Degree, Possession of a Narcotic Drug With the Intent to Sell, a Class C Felony, in violation of New York Penal Law Section 220.16, which was one of the convictions set forth in Count Nine of the Indictment, does not qualify as a "serious drug offense" because the maximum term of imprisonment prescribed by law for that offense was less than ten years. See Memorandum of Law in Support of Defendant's Pretrial Motion ("Def't Br.") at 5-6. The defendant is correct; in March 2005, the maximum sentence for

6

a Class C felony where a defendant had previously been convicted of a felony drug offense was less than ten years.  See N.Y. Penal Law § 70.70(3)(b)(ii) (2005).

However, the defendant is nevertheless subject to the enhanced sentencing provisions of ACCA.  In addition to the September 5, 2012 and August 30, 2001 drug convictions described in Count Nine of the Indictment, the defendant also was convicted on or about January 7, 2000 of Criminal Possession of a Controlled Substance in the Third Degree, Possession of a Narcotic Drug With Intent to Sell, a Class B felony, in violation of New York Penal Law Section 220.16(1).  At that time, the maximum penalty for that offense was 25 years, see N.Y. Penal Law § 70.00(2)(b) (1999), and accordingly, it qualifies as a "serious drug offense" under ACCA.

The defendant contends in a footnote that this 2000 conviction would not qualify as a "serious drug offense" for purposes of ACCA based on the fact that he was sentenced to less than ten years for this 2000 conviction.  See Def't Br. at 6 n.1.  However, the actual sentence the defendant received is of no moment in determining whether he is subject to the enhanced penalties of ACCA—the maximum sentence set by law for the offense of conviction, 25 years, qualifies this conviction as an ACCA predicate conviction.  See United States v. Buie, 547 F.3d 401, 404 (2d Cir. 2008).[3]  Here, the defendant faced a maximum of 25 years' imprisonment at the time of his conviction for the felony drug offense in 2000.

---

[3] The defendant also argues that his 2000 conviction would not qualify as a "serious drug offense" for ACCA based on a decision of a court within the Southern District of New York in United States v. Jackson, 13 Cr. 142 (PAC) (S.D.N.Y. Sep. 4, 2013) "and other similar cases."  Def't Br. at 6 n.1.  However, the defendant offers no argument for why Jackson and "other similar cases" support a finding that his prior conviction is not a "serious drug offense."  Moreover, controlling decisions from the Supreme Court and the Second Circuit provide that in determining whether a prior drug offense qualifies as a predicate felony for purposes of ACCA, a court must "consult the maximum sentence applicable to a defendant's previous drug offense at

### B. Dismissal of Count Nine Is Not an Appropriate Remedy

Calix urges—without citation to any authority—that dismissal of Count Nine is the appropriate remedy under Federal Rule of Criminal Procedure 7(c)(1), were the Court to find that he is not subject to the enhanced penalties of Section 924(e). See Def't Br. at 6-7. Such a remedy is not justified under the law.

Rule 7(c)(1) requires that an indictment "be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Civ. P. 7(c)(1). Count Nine meets this requirement. It alleges all the elements necessary to constitute the offense charged, 18 U.S.C. § 922(g)(1). Count Nine also refers to 18 U.S.C. § 924(e), but inclusion of Section 924(e) in an indictment provides notice of the enhanced sentencing provision to the defendant and is not a separate charge or offense. See, e.g., United States v. Laster, S1 06 Cr. 1064 (JFK), 2008 U.S. Dist. LEXIS 3223, at *1-2 (S.D.N.Y. Jan. 14, 2008); United States v. Whitley, 04 Cr. 1381 (RCC), 2005 U.S. Dist. LEXIS 16719, at *1-2 (S.D.N.Y. Aug. 11, 2005); see also United States v. Cobia, 41 F.3d 1473, 1475 (11th Cir. Fla. 1995) ("We have held that § 924(e) is merely a sentence enhancement provision. It does not create a separate offense.") (citing United States v. Ruo, 943 F.2d 1274, 1275 (11th Cir. 1991)).

In any event, the Government has conceded that one of the three listed predicates for the Section 924(e) enhanced sentencing provision is not applicable, and the defendant is on notice of the Government's position that his conviction on or about January 7, 2000 of Criminal

---

the time of his conviction for that offense." McNeill, 131 S. Ct. at 2221-22 (emphasis added); Rivera v. United States, No. 11-5155-pr, 2013 WL 2278408, at *3 (2d Cir. May 24, 2013) ("In McNeill, the Supreme Court held that predicate drug-related felonies are determined by reference to the 'maximum term of imprisonment' applicable to a defendant's previous drug offense at the time of the defendant's state conviction for that offense." (quoting McNeill, 131 S. Ct. at 2224) (internal quotations omitted).

8

Possession of a Controlled Substance in the Third Degree, Possession of a Narcotic Drug With Intent to Sell, qualifies as a "serious drug offense" for purposes of ACCA. Moreover, the Government intends to file a superseding indictment which will provide further notice that the defendant's January 7, 2000 conviction for Criminal Possession of a Controlled Substance in the Third Degree, Possession of a Narcotic Drug With Intent to Sell, is a predicate drug felony for ACCA purposes.

## II. Agents Lawfully Conducted a Consent Search of Calix's Apartment

Calix next argues that the consent to search he provided to federal agents was not knowing and voluntary. See Def't Br. at 9. He bases this argument on his assertions, in an affidavit filed with his papers, that officers had already started searching his bedroom, said they would search his apartment whether or not he consented, and said they would get a warrant if he did not consent, and he believed he did not "[have] any power to prevent them from searching." See Affidavit of Andre Calix, Def't Br. Ex. A ("Def't Aff.") ¶ 10. For the reasons set forth below, the Court should deny the motion to suppress evidence seized pursuant to a search of his apartment.

### A. Legal Standard

Law enforcement officers may conduct a search based upon an individual's consent, so long as that consent (1) was voluntary and (2) came from someone authorized to give it. See United States v. Matlock, 415 U.S. 164, 171-2 & n.7 (1974). The government must demonstrate that "consent [to search] was in fact voluntarily given, and not the result of duress or coercion, express or implied." Schneckloth v. Bustamonte, 412 U.S. 218, 248, 36 L. Ed. 2d 854, 93 S. Ct. 2041 (1973); see United States v. Spencer, 516 Fed. App'x 53, 53 (2d Cir. 2013). Where consent is the basis for a warrantless search, the Government must prove by a preponderance of

the evidence that the consent was voluntary. Bumper v. North Carolina, 391 U.S. 543, 548–49 (1968); United States v. Snype, 441 F.3d 119, 131 (2d Cir. 2006).

The Second Circuit has made it clear that an individual claiming that consent was not voluntarily given must make a very substantial showing of coercive conditions:

> [T]he presence of [multiple] law enforcement officers [does not] lend significant support to a claim of coercion. Consent to search has been found despite formal arrest, and such aggravating circumstances as handcuffing of a suspect, the presence of six law enforcement officers in his home and their assurance that they would remain indefinitely and secure a search warrant if consent were withheld.

United States v. Garcia, 56 F.3d 418, 423 (2d Cir. 1995). That a defendant was under arrest and in custody, or even handcuffed, does not as a matter of law require a finding of coercion, United States v. Watson, 423 U.S. 411, 424 (1976), and law enforcement officers do not even have "an affirmative duty to advise a suspect that he may refuse his consent to an apartment search." United States v. Crespo, 834 F.2d 267, 271-272 (2d Cir. 1987). See, e.g., United States v. Moreno, 701 F.3d 64, 77 (2d Cir. 2012) (holding that the defendant's consent was voluntary even where there was "forcible entry into [defendant's] motel room by armed agents who both subdued and handcuffed her [and] failed thereafter to inform her that she was not required to consent"). While consent may be ineffective where a law enforcement officer asserts "that he possesses a warrant," Bumper, 391 U.S. at 549, the fact that a law enforcement officer advises a person "of the fact that a search warrant can be obtained does not constitute coercion." United States v. Calvente, 722 F.2d 1019, 1023 (2d Cir. 1983). Accordingly, district courts in this Circuit have found that an individual's consent was voluntary notwithstanding a truthful statement by an agent that a search warrant would be obtained absent consent. See United States v. Vasquez, 638 F.2d 507, 528-29 (2d Cir. 1980) (noting that the Second Circuit "has upheld a

finding of consent in circumstances where officers stated that they could apply for a warrant and would 'no doubt' obtain one," so long as there was no trickery or deceit by law enforcement agents in making the assertion); see also United States v. Peña Ontiveros, 547 F. Supp. 2d 323, 331 (S.D.N.Y. 2008) ("[C]onsent to a search has been held to be valid where six federal agents were present in the home and the individual was told that the agents would stay there until a warrant was obtained.").

   **B.  Argument**

First, Calix asserts that officers "began searching the apartment" in the short period between when he was placed in handcuffs and when he was removed from his apartment. Def't Aff. ¶ 6. Calix concedes that agents had a valid arrest warrant, see Def't Br. at 2, and it is well recognized that pursuant to a lawful arrest, agents may search areas within the arrestee's immediate control—even when a defendant has been restrained. See Chimel v. California, 395 U.S. 752, 763 (1969); United States v. Hernandez, 941 F.2d 133, 137 (2d Cir. 1991). Moreover, agents may conduct a "protective sweep" of "closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." Maryland v. Buie, 494 U.S. 325, 334 (1990); United States v. Gayle, 74 Fed. App'x 96, 100 (2d Cir. 2003). While consent to search would be invalid if an illegal search occurred before consent was given, see Florida v. Royer, 460 U.S. 491, 501-08 (1983), Calix does not assert any specific facts in his affidavit on which one could conclude that law enforcement conducted an illegal search prior to his consent. Rather, he concedes that he was in his bedroom when arrested, see Def't Aff. ¶ 4, and that he was removed from his bedroom "soon" after being placed in handcuffs, see Def't

11

Aff. ¶ 6. Any "search" of the bedroom that the defendant argues occurred in that brief time period was permissible as either a search incident to lawful arrest, a protective sweep, or both.

Second, Calix argues that consent was not voluntary because he was in custody and was "subject to a continual show of force by multiple officers." See Def't Br. at 9. This assertion is fatally vague, as the defendant fails to allege any specific facts which would have made his consent involuntary. In any event, the fact that a defendant is in custody does not require a finding of coercion. Watson, 423 U.S. at 424. Moreover, under Second Circuit law, even the presence of multiple law enforcement officers "[does not] lend significant support to a claim of coercion," and courts have found no coercion where an arrestee is handcuffed and where six law enforcement officers are present in his home. Garcia, 56 F.3d at 423.

Third, Calix asserts in his memorandum of law that he "did not understand that he had the right . . . to refuse consent to search." Def't Br. at 9. However, there is no factual support for this assertion. Calix's affidavit merely asserts that he "did not think [he] had any power to prevent [agents] from searching," Def't Aff. ¶ 10, and that assertion is belied by the consent to search form that Calix signed, and which he attached to his moving papers. That form states "I have been advised of my right to refuse consent." See Def't Motion Ex. E. Calix offers no basis for his assertion that he did not, in fact, believe that he did not have the right to refuse consent.

Last, Calix argues that his consent was not voluntary because officers said that they "would search the apartment whether or not I consented, and that they would get a warrant if I did not consent." Def't Aff. ¶ 10. However, it is well settled that the fact that a law enforcement officer advises a person "of the fact that a search warrant can be obtained does not constitute coercion." Calvente, 722 F.2d at 1023. For example, in United States v. Peña Ontiveros,

12

consent to search was held to be valid where six agents were present in the home and the individual was told that the agents would stay there until a warrant was obtained. 547 F. Supp. 2d 323, 331 (S.D.N.Y. 2008). Calix has alleged no facts to distinguish his case from this Second Circuit authority.

Calix affirmatively cites only two cases in support of his argument that consent was "nothing more than acquiescence to a show of authority and was not voluntary," and both are inapposite. Def. Br. at 9. In United States v. Isiofia, 02 Cr. 520 (HB), 2003 WL 21018853, at *8-9 (S.D.N.Y. May 5, 2003), the court held the defendant's consent was not free and voluntary where, inter alia, the defendant was intoxicated when consent was given, the defendant was not apprised of what crime he was being charged with or of the fact that he could refuse consent, and the court had found that law enforcement officers' entry into the defendant's apartment was illegal. None of those factors are present here or alleged by the defendant. In the other case cited by the defendant, United States v. Lopez, 97 Cr. 483 (RPP), 1997 WL 790582, at *6 (S.D.N.Y. Dec. 24, 1997), the defendant was a native Spanish speaker with limited English language proficiency, and there was no evidence that she was ever informed of her right to refuse consent for a search. Here, Calix has not asserted that he did not understand what was being said to him, or he could not read the English language consent to search form that he signed.

Accordingly, the Government respectfully submits that Calix's motion to suppress the evidence seized from his bedroom should be denied following an evidentiary hearing at which the Government expects that the evidence will show that Calix's consent was knowingly and voluntarily given.

### III. Calix's Post-Arrest Statements Were Made Pursuant to a Knowing and Voluntary <u>Miranda</u> Waiver

Calix also moves to suppress statements made between his arrest and when <u>Miranda</u> warnings were given, as well as statements made subsequent to when those warnings were administered. <u>See</u> Def't Br. at 10-11. Calix has asserted that he made "several inculpatory statements" in response to "questions about bank robberies" prior to when <u>Miranda</u> warnings were given, Def't Aff. ¶ 9, and that he "did not really understand" what the <u>Miranda</u> waiver meant because agents had been "asking [Calix] questions for hours," Def't Aff. ¶ 12. Based on these assertions, Calix argues that the post-<u>Miranda</u> statements were part of an "unlawful two-step interrogation process" and should be suppressed. Def't Br. at 11.

#### A. Legal Standard

In <u>Missouri</u> v. <u>Seibert</u>, a fractured Supreme Court held that "a police protocol for custodial interrogation that calls for giving no warnings of the rights to silence and counsel until interrogation has produced a confession" was unconstitutional. 542 U.S. 600, 604 (plurality opinion) (2004). In <u>Siebert</u>, the police sought first to obtain a confession from a suspect, then administer <u>Miranda</u> warnings, and then re-interrogate the suspect so that this latter confession could be used at trial. <u>Id.</u> at 609-10. This "evinced a police strategy adapted to undermine the effectiveness of the warnings when given" and circumvent the goal of <u>Miranda</u>. <u>United States</u> v. <u>Williams</u>, 681 F.3d 35, 40 (2d Cir. 2012) (describing the plurality opinion in <u>Seibert</u>).

Justice Kennedy concurred in the judgment in <u>Seibert</u>, but believed that the plurality's suggestion that unintentional two-stage interrogations were unconstitutional "cut[] too broadly." <u>Seibert</u>, 542 U.S. at 622 (Kennedy, J., concurring). He believed that a voluntary, post-warning confession is inadmissible only if elicited as part of a "deliberate" two-step strategy designed to

14

evade Miranda and not remedied by "curative measures" to ensure that "a reasonable person in the suspect's situation would understand the import and effect of the Miranda warning and of the Miranda waiver." Id. If there was no "deliberate" strategy at all, the admissibility of the post-warning statement should be governed by a determination of whether the confession was made knowingly and voluntarily. See Oregon v. Elstad, 470 U.S. 298, 309 (1985); Seibert, 542 U.S. at 622 (Kennedy, J., concurring). In the Second Circuit, Justice Kennedy's concurrence is controlling, and the Government must prove by a preponderance of the evidence that the interrogations were not part of a deliberate two-step scheme designed to circumvent Miranda. United States v. Carter, 489 F.3d 528, 536 (2d Cir. 2007); United States v. Capers, 627 F.3d 470, 480 (2d Cir. 2010). Rather, to determine "deliberateness," courts must evaluate "the totality of the objective and subjective evidence surrounding the interrogations." Capers, 627 F.3d at 479.

**B. Argument**

The Government believes that at an evidentiary hearing, the evidence will show that the defendant was not subjected to questioning, beyond what was required to identify him as the individual named in the arrest warrant, process him, and discuss the consent to search form he signed, prior to the administration of Miranda warnings, and in any event the Government is not seeking to offer any statements made by the defendant prior to the administration of Miranda warnings. Furthermore, the evidence will show that there was not a "'deliberate' two-step strategy designed to evade Miranda." Accordingly, the defendant's motion to suppress the statements he made to law enforcement officers should be denied.

## CONCLUSION

The Government respectfully submits that (a) the defendant is subject to the enhanced sentencing provisions of ACCA, and dismissal of Count Nine of the Indictment is not an appropriate remedy; (b) the evidence adduced at a hearing will show that the defendant's consent to search was given knowingly and voluntarily; and (c) the evidence adduced at a hearing will show that law enforcement did not engage in a deliberate two-step scheme designed to circumvent <u>Miranda</u>.

Dated: New York, New York
December 24, 2013

                                      Respectfully submitted,

                                      PREET BHARARA
                                      United States Attorney for the
                                      Southern District of New York

                         By:    /s/ Richard A. Cooper
                                      Richard A. Cooper
                                      Assistant United States Attorney
                                      (212) 637-1027

# AFFIRMATION OF SERVICE

RICHARD A. COOPER, pursuant to Title 28, United States Code, Section 1746, hereby declares under the penalty of perjury:

That I am an Assistant United States Attorney in the Office of the United States Attorney for the Southern District of New York. That, on December 24, 2013, I caused the GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT NINE OF THE INDICTMENT AND TO SUPPRESS EVIDENCE to be delivered by ECF to all counsel of record.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  New York, New York
        December 24, 2013

                                By:    /s/ Richard A. Cooper
                                       Richard A. Cooper