UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDRE CALIX,<br><br>                    Petitioner,<br><br>-against-<br><br>UNITED STATES OF AMERICA,<br><br>                    Respondent. | 18 Civ. 6323 (LAP)<br>13 Cr. 582 (LAP)<br><br>ORDER |

LORETTA A. PRESKA, Senior United States District Judge

Before the Court is Petitioner Andre Calix's amended motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (See Petitioner's Motion and Brief in Support of Motion to Vacate ("Br."), dated Nov. 2, 2020 [dkt. no. 148 in 13-cr-582].)[1]  The Government opposes the motion. (See Brief in Opposition to Motion to Vacate ("Opp."), dated Jan. 15, 2021 [dkt. no. 150].)  Mr. Calix replied to the Government's opposition. (See Reply Brief in Further Support of Motion to Vacate ("Reply"), dated Apr. 22, 2021 [dkt. no. 154].)

For the reasons set forth below, the petition is denied.

I. **Background**

Between June 3 and July 18, 2013, Mr. Calix committed a series of bank robberies in New York.  Also, after having been convicted of a crime punishable by an imprisonment term

---

[1] Unless otherwise specified, all citations to docket entries herein refer to 13-cr-582.

1

exceeding one year, Mr. Calix possessed a firearm that was previously shipped and transported in interstate commerce.  (See generally Superseding Indictment, dated May 28, 2014 [dkt. no. 26].)

  a. The Superseding Indictment

On May 28, 2014, a grand jury charged Mr. Calix in a nine-count Superseding Indictment (the "Indictment").  (See id.)  The Indictment charged Mr. Calix with the following offenses:

(1) Count One: Bank robbery of a Capital One Bank branch located at 1407 Broadway, New York, New York, in violation of 18 U.S.C. § 2113(a), (id. ¶ 1);

(2) Count Two: Bank robbery of a Sovereign Bank branch located at 1350 Broadway, New York, New York, in violation of 18 U.S.C. § 2113(a), (id. ¶ 2);

(3) Count Three: Bank robbery of a Sovereign Bank branch located at 2275 Broadway, New York, New York, in violation of 18 U.S.C. § 2113(a), (id. ¶ 3);

(4) Count Four: Bank robbery of a HSBC Bank branch located at 739 Amsterdam Avenue, New York, New York, in violation of 18 U.S.C. § 2113(a), (id. ¶ 4);

(5) Count Five: Bank robbery of a HSBC Bank branch located at 2411 Broadway, New York, New York, in violation of 18 U.S.C. § 2113(a), (id. ¶ 5);

(6) Count Six: Armed bank robbery of a HSBC Bank branch located at 250 Park Avenue, New York, New York, in violation of 18 U.S.C. § 2113(a) and (d), (id. ¶ 6);

(7) Count Seven: Use and carrying of a firearm during and in relation to a crime of violence, namely the armed bank robbery as charged in Count Six in violation of 18 U.S.C. § 924(c)(1)(A)(ii), (id. ¶ 7);

(8) Count Eight: Bank robbery of a HSBC Bank branch located at 2411 Broadway, New York, New York, in violation of 18 U.S.C. § 2113(a), (id. ¶ 8);

(9) Count Nine: Felony possession of a firearm in violation of 18 U.S.C. § 922(g)(1), (id. ¶ 9).

b. Procedural History

The presiding judge at the time, Judge Robert P. Patterson, held a pre-trial conference on June 16, 2014, and scheduled the trial for September 29, 2014.  (See dkt. no. 35.)  At a pre-trial conference on August 27, 2014, Mr. Calix made a number of statements which raised questions regarding Mr. Calix's competency to stand trial.  (See dkt. no. 44 at 5:3-7.)

The Court ordered the Metropolitan Correctional Center ("MCC") to conduct a mental evaluation of Mr. Calix to determine his competency.  (See dkt. no. 40.)  The MCC issued its report on October 16, 2014, which concluded that Mr. Calix was competent, but on November 12, 2014, Mr. Calix's counsel submitted a request for a "more complete competency evaluation" before the matter proceeded to trial, asserting that the mental health evaluator did not conduct any psychological, psychiatric, or forensic testing of Mr. Calix, and he or she did not review Mr. Calix's prior medical or mental health history records.  (See dkt. no. 47 at 2-3.)  Defense counsel subsequently filed a motion to dismiss the Indictment on the ground that time under the Speedy Trial Act had expired.  (See dkt. no. 50.)

The case was reassigned to this Court in early 2015, and shortly thereafter the Court denied the motion to dismiss.  The Court concluded that the Speedy Trial Act clock stopped on August 27, 2014 – the day the competency proceedings began – at

3

thirty-nine days and remained stopped because as of March 2015, it was "not yet determined whether the Defendant [was] competent to stand trial."  (Dkt. no. 54 at 2.)  During a conference on March 5, 2015, Mr. Calix made confusing statements, including, for example, that he was an "authorized representative . . . for the corporate fiction and defendant Andre Calix."  (Dkt. no. 57 at 13:9-18.)  By order dated March 6, 2015, the Court ordered a second competency evaluation.  (See dkt. no. 56.)  The second competency evaluation concluded that Mr. Calix was competent to stand trial.  (See dkt. no. 63 at 6:4-10.)

On October 6, 2015, defense counsel requested a third evaluation based on the defense's psychiatrist's view that the second evaluation "drew a conclusion of competency which under accepted psychiatric principles should not have been found." (Dkt. no. 69 at 3:15-19.)  The Court ordered a third evaluation, and Mr. Calix was transferred to Federal Medical Center-Devens ("FMC Devens") for a period of ninety days to receive appropriate psychiatric treatment and evaluation.  (See dkt. no 68.)

The third competency evaluation concluded that Mr. Calix was competent to stand trial.  (Dkt. no. 74 at 7:2-7.)  The Court initially scheduled the jury trial to begin on July 18, 2016, but the trial was adjourned to December 5, 2016 and then to March 27, 2017, in the interests of justice due to Mr.Calix's

4

continued refusal to meet with defense counsel.  (See dkt. nos. 77, 82 at 10:19-24.)

On February 7, 2017, the Government requested an adjournment of trial to September 11, 2017 based on defense counsel's unavailability for trial in July.  (See dkt. no. 84.) The Government also requested exclusion of time under the Speedy Trial Act through the new trial date in light of Mr. Calix's refusal to communicate with defense counsel.  (Id.)  Both requests were granted.  (Id.)

Defense counsel filed a second motion to dismiss the Indictment with prejudice on August 28, 2017, arguing that the elapsed time since March 27, 2017 violated the Speedy Trial Act. (See dkt. no. 93.)  On September 14, 2017, the Court denied the motion to dismiss, reasoning that the arguments did not contravene the Court's finding that the "interests of justice served by an exclusion of time outweigh the interests of the defendant and the public in a speedy trial."  (Dkt. no. 107 at 15:15-19.)  In support of this finding, the Court considered, among other things, defense counsel's February 4, 2017 letter asking the Court to rely on the fact that Mr. Calix was still not communicating with counsel as a basis for excluding time. (Id. at 17:19-23.)[2]

---

[2] The Court also took into account that the Defendant forfeited his ability to raise the issue by failing (footnote continued)

c. Trial and Sentencing

Trial began on September 11, 2017, and on September 19, 2017, the jury found Mr. Calix guilty on all counts. (See dkt. no. 109.) On June 20, 2018, Mr. Calix was sentenced to 300 months imprisonment: (1) 156 months for Count One, Two, Three, Four, Five, Six, and Eight; (2) 84 months for Count Seven to run consecutively to Counts One, Two, Three, Four, Five, Six, and Eight; and (3) 60 months on Count Nine to run consecutively to all counts. (Dkt. no. 138 at 3.) In addition, Mr. Calix was sentenced to three years of supervised release on Counts One, Two, Three, Four, Five, Eight and Nine, and five years on Counts Six and Seven, all terms to run concurrently. (Id.)

d. Subsequent Appeal and Section 2255 Motion

On June 21, 2018, Mr. Calix filed a direct appeal, arguing that (1) his right to a speedy trial, pursuant to the Speedy Trial Act, was twice violated; (2) his Fifth Amendment right to due process was violated when the district court failed to order a fourth competency evaluation on the eve of the trial; and (3) his Sixth Amendment right to an impartial jury was violated when

---

(Continued) to object to the February 8 order for more than six months. (Dkt. no. 107 at 18:3-8 (citing United States v. Cain, No. 05-CR-231A, 2007 WL 119292 at *4 (W.D.N.Y. Jan. 10, 2007) ("Although a defendant may not waive application of the Speedy Trial Act, a defendant can forfeit the ability to challenge the basis of an ends-of-justice exclusion by failing to make a timely objection.").)

the district court denied his request for a new venire panel after the existing panel heard him making noises in a nearby room.  (See dkt. no. 139.)  On September 12, 2019, the Court of Appeals affirmed the conviction.  United States v. Calix, 787 F. App'x 4 (2d Cir. 2019).

Mr. Calix filed the present motion to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255 on November 2, 2020, along with a memorandum in support.  (See dkt. no. 148.) Mr. Calix bases his motion on two grounds: (1) that he was denied effective assistance of counsel in connection to the Speedy Trial Act, and (2) that he was denied effective assistance of counsel on direct appeal because of his appellate counsel's conflict of interest with trial counsel.  (See id.)

II. **Legal Standards**

a. Motion to Vacate

Under 28 U.S.C. § 2255, courts may "vacate, set aside, or correct" a sentence on grounds that, inter alia, "the sentence was imposed in violation of the Constitution or laws of the United States, . . . or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  Relief under Section 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results

in a complete miscarriage of justice.'" United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)).  To prevail on a Section 2255 petition, a defendant "must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982).  This is because collateral challenges "are in 'tension with society's strong interest in the finality of criminal convictions.'" See Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010) (quoting Ciak v. United States, 59 F.3d 296, 301 (2d Cir. 1995), abrogated on other grounds by Mickens v. Taylor, 535 U.S. 162 (2002)).  The defendant bears the burden of proof by a preponderance of the evidence.  See Triana v. United States, 205 F.3d 36, 40 (2d Cir. 2000).

    b. Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, Petitioner must (1) illustrate that counsel's conduct fell below the "objective standard of reasonableness," and (2) "affirmatively prove prejudice." Rodriguez v. United States, No. 10 CIV. 5259 (KTD), 2011 WL 4406339, at *2 (S.D.N.Y. Sept. 22, 2011) (quoting Strickland v. Washington, 466 U.S. 668, 693-94 (1984)).  To meet the first prong, the Petitioner must establish that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687.  "[A] Court must

8

indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.  The question is not whether the attorney in question adhered to the best practices or customs. Harrington v. Richter, 562 U.S. 86, 105 (2011).  Rather, the relevant query is whether the "attorney's representation amounted to incompetence under the prevailing professional norms."  Id. (internal quotation marks omitted).  To prove prejudice, Petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  "[N]ot every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding."  Id. at 693.

In the context of trial strategy, courts must "accord proper weight to the role of defense counsel in fashioning an overall trial strategy."  United States v. Plitman, 194 F.3d 59, 64 (2d Cir. 1999).  Courts should avoid the temptation to "second-guess counsel's assistance after a conviction or adverse sentence."  Strickland, 466 U.S. at 689.

> i. Speedy Trial Act and Speedy Trial Clause of the U.S. Constitution

In a case in which a plea of not guilty is entered, the Speedy Trial Act requires that trial commence within seventy

9

days of the filing of the indictment or from the date the defendant has appeared before a judicial officer of the court in which a charge is pending, whichever date is later.  18 U.S.C. § 3161(c)(1).  The Speedy Trial Act also contains a list of delays for which time shall be excluded in computing the time for the purposes of the Speedy Trial Act, which includes any period of delay "resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant."  18 U.S.C. § 3161(h)(1)(A).

Whether the defendant's constitutional right to a speedy trial was violated turns on four factors: (1) length of the delay, (2) reason for the delay, (3) defendant's assertion of his right, and (4) prejudice to the defendant.  Barker v. Wingo, 407 U.S. 514, 530 (1972).  All four factors must be considered together, and no matter how lengthy the delay, it "cannot alone carry a Sixth Amendment claim without regard to the other Barker Criteria."  United States v. Cabral, 979 F.3d 150, 157 (2d Cir. 2020) (quoting Dogget v. United States, 505 U.S. 647, 656 (1992)).

> ii. Conflict of Interest

The Sixth Amendment right to assistance of counsel includes the right to be represented by an attorney who is free from conflicts of interest.  See, e.g., Wood v. Georgia, 450 U.S. 261, 271 (1981); United States v. Schwarz, 283 F.3d 76, 90 (2d

Cir. 2002).  This right would be violated if the attorney has "(1) a potential conflict of interest that result[s] in prejudice to the defendant, or (2) an actual conflict of interest that adversely affect[s] the attorney's performance." United States v. Levy, 25 F.3d 146, 152 (2d Cir. 1994).  An actual conflict of interest arises when, "during the course of the representation, the attorney's and defendant's interests diverge with respect to a material or legal issue or to a course of action."  Schwarz, 283 F.3d at 91 (quoting Winkler v. Keane, 7 F.3d 304, 307 (2d Cir. 1993).  A potential conflict of interest exists when "the interests of the defendant may place the attorney under inconsistent duties at some time in the future."  United States v. Kliti, 156 F.3d 150, 153 n.3 (2d Cir. 1998).  "[T]he mere possibility of a conflict is not enough to upset a conviction; the defendant must identify an actual conflict that impeded his lawyer's representation."  Strouse v. Leonardo, 928 F.2d 548, 552 (2d Cir. 1991) (citing Cuyler v. Sullivan, 446 U.S. 335, 350 (1980)).

   III. **Discussion**

   Mr. Calix argues that he was denied effective assistance of counsel from (1) his trial counsel in connection with his statutory and constitutional right to a speedy trial and (2) his appellate counsel in connection with his direct appeal stemming from an actual conflict of interest that adversely affected

11

counsel's performance.  The Court discusses each argument in turn.

>  a.  <u>Trial Counsel Was Not Ineffective in Connection with Mr. Calix's Right to a Speedy Trial</u>

Mr. Calix bases his argument that trial counsel was ineffective in connection to his right to a speedy trial on two theories.  First, Mr. Calix argues that his trial counsel's performance was ineffective because counsel sought a ninety-day period for further evaluation of Mr. Calix's competency at FMC Devens in Devens, Massachusetts.  He claims that trial counsel sought an order "which the Court lacked authority to render, constituting <u>per se</u> deficient performance," contrary to Mr. Calix's best interest.  (Br. at 6.)  Second, Mr. Calix argues that trial counsel was ineffective for failing to cite to the Speedy Trial Clause of the Sixth Amendment, instead relying solely on the Speedy Trial Act.  For the following reasons, the Court rejects Mr. Calix's claims of ineffectiveness of counsel.

>  i.  <u>Counsel Was Not Ineffective When He Sought to Adjourn Proceedings for Further Evaluation of Mr. Calix's Competency to Stand Trial</u>

Mr. Calix argues that trial counsel provided deficient performance when requesting another evaluation to determine Mr. Calix's competency.  Regardless of whether the subsequent Section 4241(b) order violated Section 4247(b), counsel's representation was neither "unreasonable under prevailing

professional norms" nor inconsistent with "sound strategy." Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (citing Strickland, 466 U.S. at 688-89).

The adjournment was sought after the two prior competency examinations found Mr. Calix competent without interviewing Mr. Calix.  (Dkt. no. 69 at 3:8-11.)  Defense counsel's psychiatrist believed that the previous competency findings were "not scientifically accurate" and were potentially inconsistent with "accepted psychiatric principles."  (Id. at 3:12-19.)  As such, trial counsel sought a third examination, which involved twenty-four-hours of psychiatric care and observation, to better evaluate Mr. Calix's competency.

Given the importance of establishing competency for the preservation of Mr. Calix's constitutional rights and that the accuracy behind the prior finding of competency was called into question by an expert, it was reasonable for trial counsel to seek an additional evaluation.  Hence, counsel's performance did not "[fall] below an objective standard of reasonableness," Strickland, 466 U.S. at 668, or "so undermine[] the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result," id. at 686.

Mr. Calix cites to United States v. Wellington, 417 F.3d 284, 289 (2d Cir. 2005) to raise a claim that trial counsel chose to "usurp his right" to proceed to trial on his own theory

13

of defense.  (Br. at 7.)  The defendant in that case was found to be competent to instruct his counsel to waive certain arguments.  Here, however, the competency determination remained an open issue, which in turn kept open the question of whether Mr. Calix was able to contribute to his own defense at that time.  Wellington, 417 F.3d at 289.  Due to the importance of determining whether Mr. Calix was competent to stand trial, in combination with the asserted inaccuracy of the previous competency findings, it was sound strategy by trial counsel to pursue a third competency evaluation.

> ii. Counsel Was Not Ineffective When He Did Not Raise Mr. Calix's Sixth Amendment Right to a Speedy Trial as a Basis for a Motion to Dismiss

Mr. Calix next argues that trial counsel's decision to base a motion to dismiss on the Speedy Trial Act, rather than the Speedy Trial Clause of the Constitution, violated his constitutional right to effective counsel.  The Court disagrees.

An argument based on the Speedy Trial Clause would likely have failed under Barker v. Wingo, 407 U.S. 514, 530 (1972).  It is undisputed that the approximate fifty-month delay was substantial, so the first Barker factor – the length of the delay – weighs in Mr. Calix's favor.  However, the second Barker factor – the reason for the delay – is critical, as the Sixth Amendment "is rarely violated by delay attributable entirely to the defendant."  United States v. Moreno, 789 F.3d 72 (2d Cir.

2015) (citing Vermont v. Brillon, 556 U.S. 81, 90 (2009)). Here, the record is clear that much of the delay resulted from Mr. Calix's refusal to speak or meet with trial counsel and psychiatric professionals, which necessitated multiple adjournments of trial.  (See dkt. no. 47 (noting that by declining to participate in psychiatric evaluation and refusing to answer questions, combined with his continued refusal to communicate with counsel, Mr. Calix created an insufficient factual basis to determine his competency); see dkt. nos. 63, 65 (trial counsel contested previous findings of competency because Mr. Calix never met with a psychiatrist for evaluation and did not assist in his defense evidenced by continued refusal to speak to trial counsel); see dkt. nos. 77, 82 at 7 (Mr. Calix repeatedly refused to meet or communicate with defense counsel).)

Mr. Calix failed to mention what types of administrative delays were at play here and makes otherwise conclusory statements regarding the remaining claims of what caused the delay.  Other delays, which arose from trial counsel's motion to suppress, were not attributable to the Government.  Mr. Calix does not argue that the delays were a result of bad faith or negligence on the part of the Government.  Thus, the second Barker factor weighs against him.

The third Barker factor is whether the defendant asserted his right. Although Mr. Calix's failure to demand a speedy trial does not constitute a waiver of the speedy trial right, the "Supreme Court recognized that . . . such failure will make it difficult for a defendant to assert his right successfully at some later point in time." Rayborn v. Scully, 858 F.2d 84, 92 (2d Cir. 1988); see also Barker, 407 U.S. at 534 ("The speedy trial requirement should not operate to reward a recalcitrant and reluctant defendant."). Again, Mr. Calix repeatedly refused to speak with trial counsel and continued to disrupt court proceedings, thereby hindering the competency inquiry and causing multiple trial adjournments.

Finally, the fourth factor – prejudice to the defendant from the delay – is not met here. "[I]f the government pursues a defendant with reasonable diligence, the Sixth Amendment claim fails, 'however great the delay' unless the defendant can show 'specific prejudice to his defense.'" United States v. Cabral, 979 F.3d 150, 163 (2d Cir. 2020) (citing Doggett, 505 U.S. at 656). Barker sets out three interests the speedy trial right was designed to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired, the third being the most serious interest at play. Barker, 407 U.S. at 532. This last interest speaks to the

impact a length delay has on witness preparation or availability. Id. However, Mr. Calix makes no claims that there was an impact to the third interest. In the absence of such impact, his defense was not prejudiced.

Determining whether the defendant's constitutional right to a speedy trial was violated requires "a balancing test, in which the conduct of both the prosecution and the defendant are weighed." Barker 407 U.S. at 530. Mr. Calix makes no mention of delays due to conduct by the prosecution, and the record indicates that most of the delay was due to Mr. Calix's refusal to cooperate with trial counsel and psychiatric evaluation. (See dkt. no. 69 (defense counsel stated that Mr. Calix continued to refuse to meet with counsel or the psychiatrist).) The Government even expressed that it would be in favor of "[a]nything that would move the case forward." (Dkt. no. 69 at 5:8-10.) Moreover, "there is a strong presumption that an attorney's decisions made in the course of representing a client are made in the exercise of reasonable professional judgement." Davis v. McLaughlin, 122 F. Supp. 2d 437, 443 (S.D.N.Y. 2000) (citing Strickland, 466 U.S. at 690). As the Barker factors weigh heavily against Mr. Calix, it was reasonable for trial counsel to forgo moving under the Speedy Trial Clause. Had counsel done so, such motions would have likely failed, and the same resulting trial would have followed. In light of these

17

circumstances, and in the absence of prejudice to Mr. Calix, it cannot be said that trial counsel was ineffective.

> b. Appellate Counsel Was Not Ineffective on Direct Appeal due to Conflict of Interest

Strickland also governs Mr. Calix's assertion that he was deprived of effective assistance on appeal. (Br. at 16.) This Court need not address whether appellate counsel actually had a conflict of interest in his representation of Mr. Calix because, even if such a conflict existed, Mr. Calix has not "affirmatively prove[d] prejudice." Rodriguez v. United States, No. 10 CIV. 5259 (KTD), 2011 WL 4406339, at *2 (S.D.N.Y. Sept. 22, 2011).

Mr. Calix claims relief under Section 2255 is warranted because appellate counsel failed to raise the issue of the ninety-day period for the third competency evaluation as a basis for ineffective assistance by trial counsel. (Br. at 16.) However, as previously discussed, the request for the third competency evaluation was sound strategy by trial counsel and did not prejudice Mr. Calix's defense. Given the importance of finding competence, and the concern that the competency findings were "not scientifically accurate" and were potentially inconsistent with "accepted psychiatric principles," (dkt. no. 69 at 3:12-19), the argument would have likely failed on appeal, as it does here. Mr. Calix has not demonstrated that "but for

18

counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the absence of prejudice, appellate counsel's conduct did not amount to ineffective assistance.

IV. **Conclusion**

For the reasons set out above, Petitioner's motion to vacate his sentence pursuant to 28 U.S.C. § 2255 (dkt. no. 617) is denied.  The Clerk of the Court is directed to close the open motions (dkt. no. 148 in 13-cr-582; dkt. no. 1 in 18-cv-6323) and close case numbers 13-cr-582 and 18-cv-6323.

**SO ORDERED.**

Dated:     December 15, 2022
           New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge